The next argument is in Appeal No. 06-1259, Newcand Intl v. United States. Good morning, please proceed. Just a short statement. Basically, our appeal focuses on the CIT dismissal of our case for lack of jurisdiction, and our basic view is that the dismissal was incorrect because it did not follow certain decisions of this court. The CIT said that the Court of International Trade said that we did not file a motion for a preliminary injunction to stop liquidation of certain entries, and then the customs thereafter liquidated the entries. Suppose that we read Chief Judge Rustani's decision as not having found a lack of jurisdiction under I of the statutory section, but as relying on the availability of adequate legal remedies at earlier dates. What then? I believe that we fully pursued the available remedies. Newcand filed a... The letter was accepted as being a sufficient request for a scope inquiry, and yet no scope inquiry was instituted. So there were at least two things you could have done years before that you didn't do. Why doesn't that adequately support Judge Rustani's conclusion that you had alternative remedies that you didn't use, and therefore mandamus could never be granted? Well, by his background, of course, we filed the scope request with the Department of Commerce before liquidation occurred. And then, of course, there's your right, a lot of time went by. If we kept pushing the Department of Commerce to decide the scope ruling... Well, at some point, though, along the line, there came a time when, as the Chief Judge says, that there was... liquidation was imminent. I take it this was about six months after the completed scope request, I mean, with May 14, 2003, I think is the date everybody agrees. Everything that needed to be done had been done by that date, right? Right, okay. So six months go by, and there's an announcement, I guess, in August that there will be liquidation shortly, and then liquidation occurs in November. What happened between those two dates? What steps did you take to ensure that your goods did not get liquidated? It seems from the record that nothing happened during that period, and that the liquidation just happened, and you waited another year and a few months before filing something in the Court of International Trade. If by that you mean that we should have gone immediately to the Court of International Trade and filed a motion for injunction to stop liquidation, I think I would refer to your Temkin decision on the difficulties that would pose, because in filing for a motion for a preliminary injunction, then you've got to show the requirements for a preliminary injunction are met, and the requirements including success on the merits. And then we would have to basically argue the scope ruling. Mandamus is even more difficult, though, isn't it? Pardon? Mandamus is even more difficult. You need more than just a likelihood of success. You need a clear right. Well, at this point, though, we had the decision of the Department of Commerce. And weren't there administrative reviews that you could have participated in, but you didn't? Well, first, if I may, on the mandamus, at that point, we had the decision of the Department of Commerce. The product was not covered by the case. And so that was a big hurdle. And it was before the agency that should decide it. That shouldn't be litigated first at the CIT and then Department of Commerce. That's just the reverse of what should be done. And I think Temkin, if you look at some of the language, gets that that's not the right way to do it. As far as looking for annual reviews instead of a scope request, Department of Commerce has, in the regulations, where you go to look for a scope request. On this type of issue, a scope request, in the regulations, what you do is file a scope request. You do not file for an annual review. And, in fact, we can cite in the brief a number of Department of Commerce decisions which say the way you get a scope decision is not an annual review. You get that decision by filing a scope request. Let's pursue scope decision. Is it true that the requester of a scope investigation and review and decision gets notified when the investigation begins? If you look at the regulation and what it says, it says that they will initiate within 45 days. No, you're not answering the question. The question is, is it the procedure that the requester is notified when the scope investigation begins? I would say yes. Okay, so on day 46, having not been notified that the investigation had started, why weren't you screaming and yelling at the Commerce Department that they were in violation of their own regulations? And if you didn't get a satisfactory response and immediate start of an investigation, then you could have gone to the trade court to try to enforce your rights. What's wrong with that analysis? Since I'm explaining for somebody else, but that's fine. You weren't counsel at that time. No, I was not. The customs broker, as you can imagine… They have a lot of irons in the fire. This is a small – well, no, this is a – Mukunda is actually an Indian company that's rather small, and what they wanted to do first was to go through their customs broker and not a lawyer. And so procedurally – and so the customs broker, I can see from the record, he's provided more information and more information as the department requested it. And there was – so over a period of time… No, no, no, but once we get to the final letter with the supplemental information in May that the department says constitutes a sufficient request for a scope investigation, then we know that the clock runs and the investigation must start within 45 days or the department is in violation of its own regulations. And if it's true, as I thought you admitted, that notice is given to the requester when the investigation starts, then your client would have known on day 46 that the investigation had not started as required by the regulations and could have taken action. Well, I can tell you there were phone calls asking the Department of Commerce, let's get started. I'm talking about taking legal action, could have taken legal action. And legal action requires, of course, significant costs to go to the Court of International Trade. Yeah, but the mandamus requirements are that there not be an alternative sufficient legal remedy. Now, it doesn't say that's cheap or easy or quick, it just says that there exists an avenue of redress in the courts, which exists here, right? And then I would go to the analysis in your Temkin decision, which says that a seeking of a preliminary injunction may not be a satisfactory and effective remedy, because then you have to go through the burden requirements of showing a preliminary injunction, which should have been unnecessary. Why wouldn't this be a slam dunk of a preliminary injunction request? The request is the reg requires X, they didn't do X, the remedy we want is order them to do X. How could you lose, then, that kind of a petition for a preliminary injunction? Well, I'm thinking in terms of the actual getting a scope decision, and it would be in your favor on exclusion. You did get a scope decision in your favor. The trouble is you got it several years later than you may have been entitled to it, and in the intervening time, your client seemed to have done practically nothing. But I would go from a number – like your Chenier decision, too, where when commerce has a pre-existing obligation to do something, they can't thereby avoid later that obligation by not doing it. Essentially, under 1581i, I think in Chenier, when you talk about you file an appeal within two years of liquidation from the reading of that opinion, I think that sets out that you have two years. But I take it, though, that Chenier was not intended to create a regime in which you have one perfectly acceptable, all-purpose method of dealing with problems that arise during the course of the administrative process, which is just to wait until the whole thing comes to an end, and then as long as you file within two years of liquidation, you always have a vehicle with which to reopen the door. I mean, in Chenier, there really wasn't a different choice. The party had really took the only route that seemed to be open, or at least that's the way it was characterized in the court's opinion. That seemed consistent with the facts. But here, what strikes me here, and I'm asking really the same question that the Chief Judge is, which is that particularly setting aside whether non-participation in the administrative review, but on the 46th day after May 14th, with the liquidation looming – and by the way, Chenier had not yet been decided. I would have thought that a knowledgeable person looking at the situation under those circumstances would have known that they had better get going and do something before liquidation in order to preserve the right to dispute the duties. If Chenier had been decided at that point, maybe you could say, well, we'll just invoke Chenier, but it hadn't. At that point, the only Chenier case was the CIT decision, which said the exact opposite, which is once liquidation occurs, you're out a court buster on any form of 1581, including I. So it does seem to me there's a dropping of the ball here, and that's essentially what Judge Rustani relied on. Yeah, I guess I can just state a position that under the belief that 1581I provides two years to seek relief, and we did it. The petition, it was filed within that two-year period, which is consistent with later thinking in Chenier. All right. Do you want to reserve the rest of your time for rebuttal? Sure. Thank you. Mr. Tosini. Good morning. Welcome. Welcome back. Please proceed. The court got it exactly right where it was questioning counsel concerning the availability of an adequate alternative remedy here. On day 46, Mukand could have threatened the Department of Commerce with filing a petition for a writ of mandamus with the Court of International Trade. Mukand could have gone forward and filed that petition. Let me ask you this question. Suppose they had done exactly that, and the mandamus had been denied. Would they now be able to say, look, we did everything in our power, we filed the proper action on day 46 with the CIT, the Court of International Trade, and the court denied us that relief, so you must now give us relief under 1581I? That would be a totally different case. I know it would, but let's see what your answer is to that question. At that point, there might be some sort of res judicata that would prevent getting relief because the mandamus was denied the first time around, thereby allowing the entries to be liquidated because the court would have known, hey, these entries would be liquidated, and I'm going to deny this relief, and I'm going to let those entries be liquidated. But that's not a very realistic situation. What normally would occur would be the plaintiffs would file for a writ of mandamus, and Commerce would go and do what its regulation told it to do in the first place. So it's the filing of the mandamus that would, you think, trigger action by Commerce, whereas repeated telephone calls weren't effective? Well, there's no evidence of any repeated telephone calls. Well, okay, but we're told that there were repeated telephone calls. That would have gotten Commerce's attention, yes, and it's unfortunate what happened in this case. However, once the writ of mandamus was filed, Commerce very quickly did comply with its regulation and initiated a scoping. A year and a half delay, is that about right? About a year and eight months from the date that the completed scope inquiry was received until the complaint was filed at the trial court. Right, so well over a year of delay. Is there any understanding at all what the hell happened? No, there isn't, and there's nothing on the record concerning that. Do you not agree that given the case law saying that Commerce is bound by its own regulations, that it was absolutely legally required for Commerce to start the investigation within 45 days of the May date when the sufficient letter of request was received? Yes, that's true. So should there be no consequence if Commerce violates its self-imposed duty and simply doesn't do what a legally enforceable regulation requires it to do? Well, the consequence—well, there's really, I guess, two points in here. First, the consequence would be that on day 46, the respondent goes and seeks the writ of mandamus from the Court of International Trade. But I'm not talking about what outsiders could do to help Commerce wake up. I'm talking about whether Commerce doesn't have a binding, mandatory legal obligation to follow its regulation and start an investigation within 45 days. Yes, that's absolutely true, Your Honor. Now, if that's true, then why should the importer have to suffer paying duties that were unlawful, as later admitted by Commerce, just because—or at least partly because—Commerce reneged on its responsibilities for well over a year? Well, there are two primary reasons. First reason, as this Court noted in cases like Pam, the violation of a procedural regulation such as this, generally the—and there are substantial precedents, which we will concede in this case—the remedy is generally an undoing of whatever administrative determination was at issue. So if Commerce had violated a regulation in actually conducting a scope inquiry and gotten the scope determination wrong because of the violation of the regulation, then you could undo the scope determination itself. But this case was much different in that Commerce did not follow its procedural regulation and therefore did not correctly initiate a scope proceeding on time. In that case, mandamus would be the only remedy available, and as the trial court noted, it declined to issue— Well, I don't want to get into that. I'm trying to figure out what Commerce is obligated by the law to do without anybody's help, without being prodded by anybody outside. Well, Commerce is obligated to do—Commerce has what might be viewed as conflicting obligations in this case. First, on the one hand, Commerce is obligated to initiate a scope inquiry and then to issue a preliminary determination within a certain amount of time and then issue a final determination. None of which it did. None of which it did. And the consequence was an importer had to pay a lot of money that, under Commerce's ultimate view, was wrongly collected. So why shouldn't they be able to get it back? Well, that's correct. And if this mistake had been caught in time, then they really would be able to unwind some of this. The thing you keep evading is whose responsibility is it? You keep assuming that it's the responsibility of the importer. I'm trying to focus on whether it isn't at every stage the responsibility of Commerce itself. Start the investigation on time. Do it correctly. Make the finding. Do it on time. Advise customs that the duty rate now has to be less than what was posted. And therefore, the importer saves the money that they're entitled to save, all because Commerce should do what it should do. And we agree completely. And those are obligations that the executive branch imposed upon itself under regulation. However, the judicial branch, in reviewing the actions of the executive branch, has certain tools available to it. And in this case, writ of mandamus would be the only remedy that could be judicially available. And then there were other administrative remedies available at the same time through the executive branch. What you're saying, in effect, is that Commerce had a duty. It failed in its duty. The failure was remediable if action had been taken promptly. And under the mandamus rules, since prompt action was not taken, they basically lost their right to remedy Commerce's violation of the regulation. Yes, Your Honor, that's absolutely true. What is, you think, just backing up from the specific facts of this case, from a policy point of view, what we're really talking about here is a kind of, sort of a latches principle, I guess. That's what I interpret Judge Rustani to have invoked. Do you think there is prejudice to the government in a case like this from the delay in the litigation of this issue? I'm not sure in this case because we never got to the point of putting together, having to put together a detailed administrative record of what happened or having to rely on the recollections of individual witnesses. In cases such as that, maybe if it had been a long time and all the employees were gone, yes, then there would be substantial prejudice to the government. I'm unaware of any such facts going in either direction in this case. Let me ask you one other unrelated question. Do you read Chief Judge Rustani's opinion as dismissing on jurisdictional grounds or dismissing on the ground that she declined to exercise 1581I jurisdiction to grant requested relief? The latter of the two, which I also took as granting our Rule 12b1 motion, which… Well, you made motions on two different grounds, I guess, 12b1 and then 12b5, which I guess means 12b6, right? Yes. And I took it as a jurisdictional dismissal to the extent that the court rather simply relied upon the availability of an adequate alternative remedy prong of the Van Damesen analysis. We wholeheartedly agree with the court's decision. And if you read the court's decision, the Chief Judge noted numerous other cases where, say, parties had sought a writ of mandamus to compel an administrative review that the Department of Commerce had not initiated. Or, with respect to an administrative remedy here, Mukon could have, in the context of an administrative review, raised the scope issue and received even greater coverage than it would under the scope regulation. But as I think about it, it seems to me that there doesn't seem to be anything in her opinion that's inconsistent with viewing it as a taking of jurisdiction but then declining to grant requested relief as opposed to simply saying the door is barred at the outset. Maybe it's really a question that doesn't have any practical effect on the parties. But in terms of whether this is a question in which 1581i is not available at all with respect to a certain category of cases, that is to say the jurisdictional door is shut, it seems kind of hard to figure out what that category is. But instead, if you say, well, she said the door is open, but you just don't get the relief you requested because of the specific facts of this case, including failure to act promptly to seek relief. That's how we currently view jurisdiction. That this case falls, as you had just described it, that this case falls under the plain language of 1581i as involving administration and enforcement of a matter subject to 1581c. But the court declined to issue a writ of mandamus. Well, the court said that she declined to exercise 1581i jurisdiction, which is very, if she had said that the court declined to issue a writ of mandamus, then it would have been more clear to us. Well, exercise 1581i jurisdiction can be read to mean either she doesn't have jurisdiction or she declines to grant relief within the scope of her jurisdiction. Well, all right, that's enough on that, I suppose. Thank you. Well, the one thing I will add is it's kind of the interplay of 28 U.S.C. 1585 and 1581i. And the point that I really wanted to make in the brief is that Section 1585 is not an independent grant of jurisdiction. No, that's true. Mr. Ciccini, what did the Commerce Department do in the wake of this litigation to make sure that they don't fail to follow the regulation and lose a case and fail to investigate as required? I am unaware of any specific system-wide activities taken by the Department of Commerce to correct this problem. But I do wish to add that the Department of Commerce does conduct hundreds, if not thousands, of administrative proceedings every year, and this is a very, very rare event. This is not common practice in the Department of Commerce. There's this one case, but I'm unaware of any other similar mandamus cases in my four and a half years at the Department of Justice handling exclusively international trade matters. Did the Commerce Department investigate how this case got lost? I'm unaware of any investigation. I could provide the Court with a supplemental status report if it so desires. Could I ask one other question on this whole question of jurisdiction and so forth? You're right, as I understand it, that 1585 is merely a relief-granting authority as opposed to a jurisdictional predicate. But 1361, the general mandamus statute does grant original jurisdiction, but it refers just to the district courts. Do you understand the Court of International Trade to have 1361 jurisdiction or 1361-type jurisdiction, or would that be only through 1581i? I'm unsure of section 1361. I do know that our view is with respect to 1367 supplemental jurisdiction that applies exclusively to district courts and not to the Court of International Trade. Well, the Court of International Trade is not referenced in 1361. Right, and if 1361 was enacted at the same time as 1367, then the same analysis would apply if it were in the 1990 act. I think it's a good deal older, actually. Okay, go ahead. Mr. Ciacchini, in the case of a complaint, which is how this was styled as opposed to a freestanding petition for issuance of a writ of mandamus, one would think that the complaint has to assert a cause of action under some established law, and the mandamus is really more a form of relief than a type of lawsuit, not itself a cause of action, I wouldn't think. In this case, what would the underlying lawsuit be? Well, under the APA, under 5 U.S.C. 706, one of the causes, one of the one prong would be administrative agency action unlawfully withheld, and the initiation of a scope inquiry was arguably, we concede, unlawfully withheld. Is it your view that the relevant section of the Administrative Procedure Act creates a cause of action? The APA, yes, the APA provides the cause of action in all cases in which jurisdiction is predicated on Section 1581I, with the exception of constitutional claims and the motion systems case. So then, I guess in your view, this wasn't a freestanding request for mandamus. This was an APA complaint in which mandamus was the nature of the relief requested for violation of the APA and the underlying right. And that's how we treated it, yes, in all the motions of this case. Okay, thank you. Thank you. Mr. Kerning? I'll be quick. Just to remind on this course SAMBIC decision, which to some extent we used as a template, in which there the idea was somebody should file a scope request to the Department of Commerce, and they should do it before liquidation. And then there's wording that you should, if you've got to go to a 1581I appeal, you should do it within two years of liquidation. It was certainly a motivational factor in the particular approach taken. And we're talking here, maybe it's irrelevant, but a very small Indian company with limited resources is basically being forced to get the government to do what it should have done from the start. Yeah, but the logic of that is if Congress should make it easier for small or weakly funded companies to make Commerce do what it should do, then that's up to Congress, not something the court can create out of the air. Correct. Well, we thought through SAMBIC and the route given there that was a way to do it and hopefully to get it resolved without ever having to go to court. And secondly, on the idea of an annual review or going for an annual review, the purpose of the Department of Commerce annual reviews is if you have sales to the U.S. that are subject to the case, then you calculate their dumping margin. The purpose of the annual review, as the Department of Commerce itself states in quite a few cases we cited, is not to determine the scope of what's covered by an order or not. They will specifically say, and they have, file a scope request. And so we did exactly as requested. And in fact, in SAMBIC, when they say, this court said in SAMBIC, what should you do in this case? The court said file a scope request. But in this case, I take it that there was an initiation of a review with respect to coming, I guess, from the domestics. And there was a questionnaire that went to Mukund, but there was a response file, but late. And this is, I think, in 2002. The questionnaire, for the record, it was mailed to Mukund in India. At least their view is it was mailed to the wrong person, and they never realized it. When they found out, they immediately told the department, look, we had no sales. But the department said, too late to tell us. Had the department accepted that, both as timely and also on its face, had reviewed it and concluded that that was true, consistent with it, that would in effect have been a kind of scope request. To say we had no sales. Well, why didn't you have sales? We didn't have any sales because we're not covered by this particular order. Wouldn't that be the way the analysis would work that Commerce would do? Well, you might think that, but then when you look at how they treated the particular scope request in Mukund, where they laid it out and then the department just didn't decide it, didn't decide it, didn't decide it. So I have no idea what Commerce would have done in that circumstance. Thank you. We thank both the counsel. We'll take the appeal under advisement.